

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-09-295-CR

JAMES TERRY HARPOLE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

------------

### FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant James Terry Harpole appeals his conviction for possessing less than one gram of methamphetamine.[2]   In four related points that he briefs together, appellant argues, in sum, that a state trooper's request for consent to search him occurred after the purpose of the initial traffic stop had been achieved, which rendered the search unconstitutional and the resulting evidence inadmissible.  We affirm.

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Health & Safety Code Ann. §§ 481.102(6), .115(b) (Vernon 2010).

## Background Facts

Late one night in December 2007, State Trooper Kristopher S. Hall, who was riding with another trooper, stopped appellant because appellant's front left headlight was not working and he failed signal a left turn. Appellant engaged in some small talk with Trooper Hall and surrendered his driver's license and proof of insurance. For the officers' safety, Trooper Hall asked appellant to get out of the truck, and then appellant answered questions from Trooper Hall. Appellant admitted to having been arrested "four or five" times and said that he had used illegal drugs in the past. Appellant also disclosed the possibility of having an outstanding traffic-related warrant. Trooper Hall saw that appellant was nervous, had eyes as "wide as saucers," and was speaking rapidly and loudly.

During the questioning on the side of the road, Trooper Hall asked, "Mr. Harpole, is there anything illegal in your truck today?" Appellant responded, "No sir, you can search it." Trooper Hall did not act upon the consent to search at that time.

Upon speaking to dispatch, Trooper Hall discovered that appellant had a suspended license; thus, Trooper Hall wrote a citation for an invalid driver's license in addition to a warning for an inoperable headlight. While Trooper Hall was issuing the citation and explaining appellant's responsibilities with respect to it, he noticed a change of demeanor in appellant; appellant's voice became more subdued while his body language became more defensive, which made Trooper Hall suspicious. Trooper Hall handed the citation to appellant, and immediately

2

after doing so, Trooper Hall said to appellant, "You said it's alright for me to search your truck?"  Appellant said, "Yes, sir."  Trooper Hall then said, "It's ok to search you?"  Appellant again said, "Yes, sir."  Trooper Hall promptly found a methamphetamine pipe in the pocket of appellant's jacket.[3]

Appellant was arrested and indicted for possessing methamphetamine of less than one gram, to which he pled not guilty.  Appellant's trial counsel unsuccessfully attempted to suppress Trooper Hall's search through a pretrial motion and again at the start of the trial, and the case proceeded to a trial before a jury.  The jury found appellant guilty, and under the parties' agreement, the trial court sentenced him to twenty-four months' confinement, suspended the sentence, and placed appellant on community supervision.  Appellant filed his notice of appeal.

## The Denial of Appellant's Motion to Suppress

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.  *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact

---

[3]Trooper Hall did not tell appellant that he was free to leave once he received the citation, but Trooper Hall did not tell appellant that he was not free to leave or that his detention would continue if he refused consent to be searched.

questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 130 S. Ct. 1015 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

Warrantless searches may be validated by a defendant's voluntary consent to be searched. *See Johnson v. State*, 226 S.W.3d 439, 443–47 (Tex. Crim. App. 2007); *Gutierrez v. State*, 221 S.W.3d 680, 686–88 (Tex. Crim. App. 2007). In other words, a search based on voluntary consent is not unreasonable. *See Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000).

Appellant does not contest the legality of Trooper Hall's stopping his truck for traffic violations, the validity of any of the troopers' actions before Trooper Hall gave appellant the citation, or the overall length or reasonableness of his initial detention. Also, appellant does not assert the involuntariness of his consent to be searched.[4] Instead, he contends that once the reason for the stop was complete and Trooper Hall had given the citation, Trooper Hall's continued detention of him, in which Trooper Hall gained his consent for the search, was unreasonable and illegal, and "any searches conducted during the period of illegal detention [are] inadmissible 'fruits of the poisonous tree.'"

Precedent precludes appellant's argument. In *Saldivar v. State*, an officer wrote Saldivar citations for various crimes and told Saldivar about his duties related to the citations. 209 S.W.3d 275, 278–79 (Tex. App.—Fort Worth 2006, no pet.) (mem. op.). After the officer told Saldivar that he was free to leave, the officer asked Saldivar questions that caused Saldivar to admit that he was possessing cocaine. *Id.* at 279. Saldivar gave consent to the officer to search his vehicle, and the officer found the cocaine. *Id.* The trial court denied Saldivar's motion to suppress, and on appeal, Saldivar argued that the officers that were involved in his detention "were required to issue his citations and to

---

[4]A search based on consent is not voluntary when, under various factors, it has been induced by duress or coercion. *Vafaiyan v. State*, 279 S.W.3d 374, 381 (Tex. App.—Fort Worth 2008, pet. ref'd); *Beall v. State*, 237 S.W.3d 841, 849 (Tex. App.—Fort Worth 2007, no pet.) (explaining that a "warning that an individual does not have to consent to a search and has the right to refuse is not required nor essential").

release him as soon as they finished, and that his Fourth Amendment rights were violated because they unduly prolonged the investigation, without reasonable suspicion, by asking whether he had anything other than alcohol in his vehicle."

*Id.* at 279, 282. We rejected Saldivar's argument under the following rationale:

> A detention may last no longer than is necessary to effectuate the purpose of the stop. Once the purpose has been satisfied, the stop may not be used for an unrelated "fishing expedition." Once an officer concludes the investigation of the conduct that initiated the stop, a continued *detention* is permitted only if there is reasonable suspicion to believe another offense has been or is being committed.
>
> But it is not per se unreasonable to ask questions or request consent to search after a detention is completed, as long as a message is not conveyed by the officer's words or acts that compliance is required. The officer may not further detain the occupant or the vehicle if consent is refused, unless reasonable suspicion of some criminal activity exists.
>
> The Fourth Amendment does not require that a lawfully seized defendant must be advised that he is "free to go" before his consent to a search will be recognized as voluntary. . . .
>
> . . . .
>
> Because we hold that Appellant was no longer detained when Corporal Long asked him if he had any contraband in his jeep, Appellant's response to the question was voluntary, as was his consent to retrieve the cocaine.

*Id.* at 282–85 (citations and footnotes omitted).

Similarly, in *James v. State*, James contended that there was "no reasonable basis for continued detention and search after the purpose of the

6

original stop was effectuated." 102 S.W.3d 162, 167 (Tex. App.—Fort Worth 2003, pet. ref'd).[5] We disagreed with James's assertion, stating,

> It is not unreasonable *per se* to request consent after completion of a traffic stop.
>
> A police officer may approach a citizen without probable cause or even reasonable suspicion to ask questions or obtain consent to search. Likewise, reasonable suspicion is not required for a police officer to request consent to search an automobile after the reason for an initial stop is concluded as long as a message is not conveyed that compliance is required.
>
> . . . .
>
> Officer Faglie had both written and verbal consent from James, in whose name the vehicle was rented. In light of the totality of the circumstances, and absent a contention that consent was involuntary or that a reasonable person would not have felt free to leave,[[6]] we conclude that the subsequent search and seizure of the contraband were not illegal.

*Id.* at 173 (citations omitted). Other courts have likewise held that officers may ask for consent to search a defendant or the defendant's vehicle after finishing a traffic stop, without having reasonable suspicion to do so, as long as the officers do not convey that compliance with the request is required. *See Magana v. State*, 177 S.W.3d 670, 673 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Levi*

---

[5]In *James*, an officer gave a warning citation to the driver and then asked James, who was the passenger and the renter of the car, for consent to search it, at which point James consented. *Id.* at 168. Upon searching the car, officers found over four hundred pounds of drugs. *Id.*

[6]Appellant does not directly contend that he believed that he was not free to leave when Trooper Hall gave him the citation and then asked for consent to search.

*v. State*, 147 S.W.3d 541, 544 (Tex. App.—Waco 2004, pet. ref'd); *see also Strauss v. State*, 121 S.W.3d 486, 491 (Tex. App.—Amarillo 2003, pet. ref'd) ("[O]nce the purpose of the stop has been effectuated and the officer's suspicions allayed, he may still ask the driver if he possesses any illegal contraband and then solicit his voluntary consent to search the vehicle.").

Appellant relies on *Davis v. State* to contend that his motion to suppress should have been granted. 947 S.W.2d 240, 242–46 (Tex. Crim. App. 1997). For the reasons that we stated in *James*, *Davis* is distinguishable. *See James*, 102 S.W.3d at 173 ("[James] argues that, under *Davis*, the officer must have discovered new or additional facts creating a reasonable basis for seeking consent to the continued detention and search. *Davis* does not stand for that proposition.").

Appellant also cites *Lambeth v. State* to contend that Trooper Hall needed to have reasonable suspicion to ask him to give consent after issuing the citation. 221 S.W.3d 831, 834 (Tex. App.—Fort Worth 2007, pet. ref'd) (en banc) (op. on reh'g). In *Lambeth*, after Lambeth *refused* consent for a trooper to search a car and the trooper issued traffic citations to Lambeth, the trooper called for a canine unit and informed Lambeth that he was *not* free to leave. *Id.* at 834–35. We held that the continued detention was justified by reasonable suspicion because just before issuing the citations, the trooper smelled marijuana on appellant. *Id.* at 837–38. Here, unlike in *Lambeth*, reasonable suspicion was not required at the time appellant gave consent for the search; appellant never refused to give

8

consent to the search, and Trooper Hall did not explicitly inform appellant that he was not free to leave before or after the citations had been issued. Trooper Hall also did not take any action, such as holding appellant's license, to imply that appellant was not free to leave when Trooper Hall gave appellant the citation and asked for consent to search him.

For all of these reasons, we conclude that appellant's consent for Trooper Hall to search him is not rendered ineffective merely because it came immediately after appellant's detention had ended. Thus, we hold that Trooper Hall's search is legal based on appellant's consent, and we overrule appellant's four points.

## Conclusion

Having overruled appellant's points, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 29, 2010